UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AVIS S. JOHNSON                                    CIVIL ACTION

VERSUS                                             NO. 10-1631

MICHAEL J. ASTRUE,                                 MAGISTRATE JUDGE
COMMISSIONER OF                                    JOSEPH C. WILKINSON, JR.
SOCIAL SECURITY

## ORDER AND REASONS

Avis S. Johnson, appearing pro se, brought this employment discrimination action

against her former employer, Michael J. Astrue, the Commissioner of the Social Security

Administration.  Johnson alleges that defendant subjected her to "discrimination based

upon my age, race, mental and physical disabilities, harassment, retaliation, denied

promotions and awards; also I worked in an environment that was hostile and unhealthy

to be in."  Complaint, Record Doc. No. 2, at p. 2.  She asserts that defendant violated

Title VII, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act (the

"ADEA"), 29 U.S.C. § 621 et seq.; and the Rehabilitation Act, 29 U.S.C. § 701 et seq.[1]

---

[1]Plaintiff also asserts claims under the Americans with Disabilities Act (the "ADA").  However, the ADA excludes the federal government from its definition of "employer," so federal employees have no cause of action against their employer under the ADA.  They may bring claims of disability-based discrimination under the Rehabilitation Act.  Smith v. Potter, 400 F. App'x 806, 812 (5th Cir. 2010) (citing 42 U.S.C. § 12111(5)(B)(i); Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003)).

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 22.

Astrue filed a motion for summary judgment, supported by voluminous exhibits drawn from the record of prior administrative proceedings regarding plaintiff's charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). Defendant's exhibits include plaintiff's sworn affidavit and the sworn testimony of several witnesses, including Johnson, during a hearing before an Administrative Law Judge ("ALJ") with the EEOC. Record Doc. No. 36.

During this litigation, Johnson has submitted to the court numerous, extensive written statements explaining her claims with voluminous supporting documents, some of which are duplicates of the materials that Astrue submitted with his motion. Plaintiff's documents are attached to her complaint, Record Doc. No. 2; her motion for leave to supplement her complaint, Record Doc. No. 9; her memorandum in opposition to defendant's previously filed motion to dismiss, Record Doc. No. 17; her "Response to Counsel for the Defendant's Answer to Plaintiff's Complaint," Record Doc. No. 27; and her "Motion for Leave to Amend Complaint to Include Constructive Discharge," Record Doc. No. 32.

2

In two telephone conferences with the court and opposing counsel held after Astrue moved for summary judgment, Johnson advised the court that she has no additional materials or arguments to submit in opposition to his motion, and she asked that all of her previous submissions be considered in opposition to the motion.  Record Doc. Nos. 37, 40.  I have done so.

I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 was revised to "take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."  Order of the Supreme Court of the United States (Apr. 28, 2010), www.supremecourt.gov/orders/courtorders/frcv10.pdf.   Because "the standard for granting summary judgment remains unchanged" by the revision, Federal Civil Judicial Procedure and Rules, 2010 Amendments Advisory Committee Notes, at 260 (West 2011 rev. ed. pamph.) (hereafter "Advisory Committee Notes"), I find it just and practicable to apply the revised Rule 56 in this proceeding, which was filed before December 1, 2010.

Revised Rule 56 establishes new procedures for supporting factual positions, as follows:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce

admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted)

(emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"  Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

II.    THE UNDISPUTED MATERIAL FACTS

The evidence[2] establishes the following undisputed material facts.  Johnson is an African-American woman who began working for the Social Security Administration in 1979.  In 2004, she was a Senior Case Technician in defendant's Office of Hearings and

---

[2]"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Although neither party has provided sworn verifications of their supporting evidence, neither has either party objected that any of the evidence is inadmissible.  Accordingly, I have considered all of the evidence submitted.

Appeals and was more than 40 years old.  Her supervisor in 2004 and for the preceding 16 years was Marilyn Swear, who was Caucasian and more than 40 years old.

Plaintiff alleges generally that Swear assigned to her larger, more complex cases than she did to similarly situated white, younger or non-disabled employees; reviewed her work more closely than that of other employees; did not make "allowances" for her that Swear made for other employees; constantly complained about plaintiff's work performance, implying that she was an unproductive "slacker"; and was more patient and respectful with white employees than black employees.  Although plaintiff's written statements in the administrative record and this court are extremely voluminous, they contain substantially more conclusory and generalized allegations than specific facts. The specific facts on which she bases her claims are as follows.

On July 8, 2004, Swear questioned Johnson in the office about the volume of work that plaintiff had completed during a day when she had worked at home.  Plaintiff alleges that Swear questioned her in a loud and hostile tone and went into a tirade.[3]  Swear expressed doubt that Johnson had finished sufficient work during her at-home day and suggested that she might need to submit a leave request for any hours that she could not

---

[3]Swear's statement in the administrative record presents a different version of the incident, in which Johnson screamed at Swear.  Defendant's Exh. 1, at p. 192.  The court cannot make credibility judgments when deciding a motion for summary judgment and will assume, solely for purposes of the pending motion, that plaintiff's version is accurate.

document that she had actually worked during that day.  However, Johnson was never required to take any leave for the at-home work day.

While Swear was questioning her, plaintiff became extremely upset and felt ill. Glenda Terrance, the Hearing Office Director, gave Johnson permission to go home for the day.  Plaintiff never returned to work after July 8th and was on leave for the next few months.  She contends that the incident caused her to suffer a nervous breakdown. Johnson filed a worker's compensation claim, which was denied on September 20, 2004. She retired voluntarily on October 1, 2004.[4]

Johnson alleges that Swear assigned her excessive and more difficult work and monitored her work more closely than that of other, especially white, employees.  The evidence establishes that the procedure for assigning work affected the entire office, not just plaintiff.  After Terrance (who is African-American) became the Hearing Office Director, she changed some office policies in 2003 concerning work distribution among the employees, including Johnson.  Two employees in plaintiff's position, Judy Hollis and Railey Peters, testified that Swear reviewed the work they completed at home and questioned other employees at their desks about their at-home work.  Terrance and Benita

---

[4]I previously denied plaintiff's motion to amend her complaint to add a constructive discharge claim.  Record Doc. No. 35.  As I stated in that order, "the record is clear that plaintiff voluntarily dismissed and otherwise precluded consideration of any constructive discharge claim when her case was being considered at the administrative level.  Because of plaintiff's action at the administrative level, this court is now without authority to consider such a claim."  Id. at p. 1.

Lobo, another supervisor, testified that Swear routinely reviewed the at-home work of employees under Swear's supervision.

Since 2001, when Johnson was approved not to use a Dictaphone because of her tension headaches, she never requested that defendant make any accommodation for her alleged disabilities.

Swear commented to at least one black employee, but not to Johnson, that one of Swear's ancestors had been an overseer on a plantation. Swear also said this to Terrance. Terrance did not feel that Swear told her the information because Terrance was black and she did not feel at all intimidated or threatened by Swear's comment. Terrance believed that Swear was simply reporting about a trip she had taken over the weekend during which she had learned this new fact. No employee ever complained to Terrance that Swear's comment in this regard was racist.

Johnson alleges that, at some unspecified time, Swear yelled at her and another black employee in a loud, harsh, intimidating manner to stop "congregating" around the copy machine. She avers that Swear waved a pen in her face a few inches from her eyes during this incident and that Swear did not treat white employees in this fashion. She claims that Swear "pressured" her to retire after she attained 30 years of service with the government in 2001 and at various, unspecified times thereafter, and that Terrance also encouraged her to retire in 2003 and 2004 as a way of resolving her conflict with Swear.

9

III.    ANALYSIS

    A.    Some of Plaintiff's Claims Are Time-Barred

On August 25, 2004, plaintiff contacted an EEOC counselor regarding the above allegations of age, race and disability discrimination, and she filed a formal charge of discrimination regarding those allegations on November 26, 2004.  She also complains in her various written statements at the administrative level and in this court that she did not receive promotions for which she was qualified in the 1980s and 1990s, and did not receive employee-nominated cash awards at unspecified times.  She alleges that Swear "pressured" her to retire after she attained 30 years of service with the government in 2001.  Plaintiff may also be alleging that Swear retaliated against her for having filed grievances with her union in 2002.

To the extent that these claims predate 2004, they are not properly before this court.  Prior to filing suit in federal court under Title VII or the Rehabilitation Act, an "aggrieved federal employee first must file a formal complaint with the agency that allegedly discriminated against him."  Brown v. Snow, 440 F.3d 1259, 1262-63 (11th Cir. 2006) (citing 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.106(a)); accord Smith v. Potter, 400 F. App'x 806, 811 (5th Cir. 2010) (citing 29 U.S.C. § 794a(a)(1); Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006); Prewitt v. U.S. Postal Serv., 662 F.2d 292, 304 (5th Cir. Unit A 1981)); Martinez v. Dep't of U.S. Army, 317 F.3d 511, 512 (5th Cir.

2003) (citing 42 U.S.C. § 2000e-16(c)).  "Exhaustion of administrative remedies is a prerequisite to federal subject matter jurisdiction [under Title VII and the Rehabilitation Act].  A failure to comply with this requirement deprives the district court of jurisdiction."  Smith, 400 F. App'x at 811 (citing Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990)).

On the other hand, the ADEA provides federal employees with two options.  An employee may file an age discrimination complaint with the EEOC and then file suit in a federal district court after exhausting her administrative remedies, or she may choose to forego the administrative remedy and bring suit directly in federal court.   29 U.S.C. § 633a(b)-(d); Smith, 400 F. App'x at 809-10; Rossiter v. Potter, 357 F.3d 26, 26 (1st Cir. 2004).  If an employee chooses "the administrative route, [s]he must completely exhaust [her] administrative remedies before commencing suit in federal court."  Smith, 400 F. App'x at 810.

Federal regulations provide a 45-day time limit within which a federal employee must contact an EEOC counselor with a discrimination complaint under Title VII, the Rehabilitation Act and the administrative remedy option of the ADEA.  The employee is required "to initiate contact with an EEOC counselor within forty-five days of the date of the matter alleged to be discriminatory."  Eberle v. Gonzales, 240 F. App'x 622, 626 (5th Cir. 2007) (citing 29 C.F.R. § 1614.105(a)(1)).

11

Johnson complied with the administrative exhaustion requirements as to her age, race and disability discrimination claims stemming from the events of 2004, and those claims are properly before this court.[5]  However, the record is clear that plaintiff did not contact an EEOC counselor or file a discrimination charge at any time before August 25, 2004.  Thus, she did not exhaust her administrative remedies as to any claims arising from events that occurred before 2004, and she is barred from bringing those claims in this court.

Alternatively, if the employee chooses the administrative bypass option under the ADEA, she must notify the EEOC of the alleged discriminatory act within 180 days of the event and notify the EEOC of her intent to sue at least 30 days before commencing the lawsuit.  29 U.S.C. §§ 633a(c), (d); Rossiter, 357 F.3d at 29 (citing Stevens v. Dep't of Treasury, 500 U.S. 1, 5 (1991)); Edwards v. Shalala, 64 F.3d 601, 603-04 (11th Cir. 1995).  Because there is no evidence that Johnson complied with these procedural prerequisites as to any ADEA claim arising from events that occurred before 2004 prior to filing the instant suit on June 3, 2010, her claim is barred.

In addition, any ADEA claim that plaintiff has asserted originally in this court based on pre-2004 events is barred by the applicable statute of limitations.  The ADEA

---

[5]The question whether Johnson timely initiated contact with an EEOC counselor was litigated at the administrative level and resolved in her favor.  Astrue does not contend that any of plaintiff's claims that were involved in the administrative proceedings are untimely in this court.

does not contain any express limitations period for federal employees who exercise its administrative bypass option.  The question of which limitations period should apply is unsettled, and the Fifth Circuit has not addressed it.  In any event, the period is no longer than two years from the date of the discriminatory act.  <u>See</u> <u>Rossiter</u>, 357 F.3d at 27 (borrowing two-year limitations period from the Fair Labor Standards Act, 29 U.S.C. § 255(a)); <u>Burzynski v. Cohen</u>, 264 F.3d 611, 619 (6th Cir. 2001) (borrowing 90-day limitations period from Title VII, 42 U.S.C. § 2000e-16(c)); <u>Edwards</u>, 64 F.3d at 605-06 (rejecting six-year limitations period for non-tort civil actions against the federal government under 28 U.S.C. § 2401(a) and borrowing Title VII's 90-day limitations period); <u>Asbury v. Green</u>, 582 F. Supp. 2d 1323, 1330-31 (D.N.M. 2008) (citing <u>Rossiter</u>, 357 F.3d at 27) (borrowing two-year limitations period from the Fair Labor Standards Act).

Thus, any discrimination claims that were not administratively exhausted under either of the three statutes, or that are barred by the procedural requirements of the ADEA's administrative bypass option, cannot now be addressed by this court. Accordingly, to the extent that Johnson asserts any claims based on events before 2004, defendant is entitled to summary judgment in his favor on those claims.

B.      Plaintiff Cannot Establish a Prima Facie Case of Age or Race
        Discrimination

Defendant argues that Johnson cannot establish a prima facie case of race discrimination under Title VII or age discrimination under the ADEA. These two statutes impose similar requirements for a prima facie case.

To establish a prima facie case of race discrimination, Johnson must provide evidence to show that she (1) is a member of a protected class, who was (2) qualified for the position, (3) subjected to an adverse employment action and (4) replaced by someone outside of the protected class, or, in the case of disparate treatment allegations, that other similarly situated employees were treated more favorably. Lawson v. S. Components, Inc., 410 F. App'x 833, 835 (5th Cir. 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804-05 (1973); Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005); Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)).

Similarly, to establish a prima facie case under the ADEA, Johnson must show that she was (1) discharged, (2) qualified for the position, (3) within the protected class of persons over age 40, and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise subjected to adverse employment action because of her age. Rexses v. The Goodyear Tire & Rubber Co., 401 F. App'x 866, 868 (5th Cir. 2010) (citing Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309, 312

14

(5th Cir. 2004); <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 966 (5th Cir. 1999)); <u>Jackson v. Cal-Western Packaging Corp.</u>, 602 F.3d 374, 378 (5th Cir. 2010).

To survive defendant's summary judgment motion, plaintiff must provide evidence that she meets all four prongs of the prima facie case for her claims of race and age discrimination.  A failure to satisfy one prong of the prima facie case for either claim will defeat that claim, and the court need not consider whether she could establish the other elements of a prima facie case.  <u>Lawson</u>, 410 F. App'x at 836; <u>Keelan v. Majesco Software, Inc.</u>, 407 F.3d 332, 345 (5th Cir. 2005); <u>Simmons v. Cadence Design Sys., Inc.</u>, No. 3:05-CV-1921-K, 2007 WL 4104373, at *8 n.7 (N.D. Tex. Nov. 16, 2007) (citing <u>Celotex Corp.</u>, 477 U.S. at 325; <u>McDonnell Douglas</u>, 411 U.S. at 802).

The evidence in the instant case establishes as an undisputed fact that Johnson did <u>not</u> experience any "adverse employment action," which is a required element of her prima facie case of either race or age discrimination.  The United States Court of Appeals for the Fifth Circuit has held repeatedly that the term "adverse employment action" for purposes of discrimination claims includes "'only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating,'" <u>Bouvier v. Northrup Grumman Ship Sys., Inc.</u>, 350 F. App'x 917, 922 (5th Cir. 2009) (quoting <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007)) (Title VII claims), <u>or</u> actions that "'would tend to result in a change of [plaintiff's] employment status, benefits

15

or responsibilities.'" <u>Martin v. Lennox Int'l Inc.</u>, 342 F. App'x 15, 18 (5th Cir. 2009)

(quoting <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 407 (5th Cir. 1999))

(ADEA claims); <u>accord</u> <u>Walton-Lentz v. Innophos, Inc.</u>, No. 08-601, 2011 WL 721491,

at *8 (M.D. La. Feb. 22, 2011) (Trimble, J.).[6]

The evidence establishes that Johnson did not return to work after July 8, 2004 and

that she was on leave until she retired on October 1, 2004. She has produced no evidence

to show that any "adverse employment action," as defined by the Fifth Circuit, occurred

during the relevant time period. Swear's questioning of plaintiff regarding the amount

of work she had completed while working at home was within Swear's ordinary

supervisory functions. Johnson was not required to take leave or make up any of the time

about which Swear questioned her. Swear's supervision of Johnson in this regard

implicated neither hiring, discharging, promoting nor compensating, and did not result

in any change in plaintiff's employment status, benefits or responsibilities. Plaintiff's

allegations that Swear assigned her more difficult cases, reviewed her work closely,

criticized her for low productivity and yelled at her for "congregating" are not adverse

_____

[6]In <u>Burlington N. & Santa Fe R. Co. v. White</u>, 548 U.S. 53 (2006), the Supreme Court held that Title VII's retaliation provisions prohibit more conduct than its discrimination provisions. "Expressly <u>limiting its holding to retaliation claims</u>, the Supreme Court abrogated the 'ultimate employment test' and held that employees much [sic] show that a reasonable employee would have found the challenged action materially adverse. However, the <u>'ultimate employment test' still applies to cases alleging discrimination</u>." <u>Bouvier</u>, 350 F. App'x at 922 n.2 (citing <u>Burlington N.</u> at 67; <u>McCoy</u>, 492 F.3d at 559-60) (emphasis added).

employment actions, as a matter of law.  See King v. Louisiana, 294 F. App'x 77, 85-86 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions"); Baloch v. Kempthorne, 550 F.3d 1191, 1197 (D.C. Cir. 2008) (court will not "engage in judicial micromanagement of business practices by second-guessing employers' decisions about which of several qualified employees will work on a particular assignment") (quotation omitted); Ellis v. Principi, 246 F. App'x 867, 870-71 (5th Cir. 2007) (citing Washington v. Veneman, 109 F. App'x 685, 689 (5th Cir. 2004)) (Plaintiff's allegations that her supervisor gave her less favorable work assignments, denied her a performance award and required her to use leave time to compensate for arriving late are not adverse employment actions.  "A decision by a supervisor with respect to leave time can hardly be considered an ultimate employment decision when the supervisor merely chooses to enforce the employer's protocol."); Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (criticism, oral threats, abusive remarks and threats of termination did not rise to level of adverse employment action); Montgomery v. Sears Roebuck & Co., 720 F. Supp. 2d 738, 744-45 (W.D. La. 2010) (James, J.) (plaintiff, who was offered a demotion at the same pay rate, which she refused; who remained in her job without any pay reduction; and who received written disciplinary notices, suffered no adverse employment action); Lopez v. Kempthorne, 684 F. Supp. 2d

827, 885 (S.D. Tex. Jan. 14, 2010) ("denial of telecommuting agreement, denial of use of an entrance door, close monitoring by her supervisor, changes in her drafts of engagement letters, delayed award, assignment to a small office, denial of a larger and better located office, and denial of work requests" are not adverse employment actions); id. at 886 (supervisor's demeaning remarks to plaintiff, which were unrelated to any of plaintiff's protected classes, were not, "in themselves, adverse employment actions").

Johnson has presented no genuine issue of material fact regarding whether she suffered an adverse employment action.  She therefore cannot establish a prima facie case of either race or age discrimination, and defendant is entitled to summary judgment in his favor as a matter of law as to these claims.

C.    Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination or Disability-Based Hostile Work Environment

Johnson lists her mental and physical disabilities as severe anxiety, depression, obsessive compulsive disorder, bilateral lens implants due to removal of cataracts in both eyes, chronic tension headaches, overactive bladder, acid reflux disease, chronic constipation, weight loss, diverticulitis, fascitis in both heels and status post hammer toe surgery on both feet.  She alleges vaguely that she was discriminated against and/or subjected to a hostile work environment on the basis of her disabilities.

To establish a claim of discrimination under the Rehabilitation Act, Johnson must make a prima facie showing that she "(1) is an individual with a disability; (2) is otherwise qualified to perform the job; (3) was employed in a program or activity that receives federal funding; and (4) was discriminated against solely because of [her] disability." Handy v. Brownlee, 118 F. App'x 850, 854 (5th Cir. 2004) (citing Hileman v. City of Dallas, 115 F.3d 352, 353 (5th Cir. 1997); Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993)).

As to the first prong of a prima facie case, the Rehabilitation Act defines "an individual with a disability"

> as one "who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." . . . . A physical impairment is "any physiological disorder or condition, cosmetic disfiguration, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs; respiratory including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  A person is "regarded" as having a disability if he
> > (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by [an employer] as constituting such a limitation;
> > (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> > (C) has none of the [above described impairments] but is treated by [an employer] as having such an impairment.

19

Moore v. McCullough, 351 F. Supp. 2d 536, 541-42 (N.D. Miss. 2005) (Davidson, C.J.)

(quoting Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993) (citing 29 U.S.C.

§ 794; 45 C.F.R. §§ 84.3(j)(2)(i), 84.3(j)(2)(ii))) (bracketed inserts in original).

In this case, Johnson has presented no evidence that her alleged disabilities

substantially impaired a major life activity before she left work on July 8, 2004, or that

her employer treated her as a person with such an impairment.  She was not diagnosed

with or treated for anxiety, depression or any other mental illness before July 8, 2004.

After she received approval not to use a Dictaphone in 2001 because of tension

headaches, she never requested that defendant make any accommodation for any medical

disabilities.  Thus, she cannot establish that she was an "individual with a disability," as

defined by the Rehabilitation Act, or that she was discriminated against solely because

of her disability.

Similarly, to survive summary judgment on her disability-based hostile work

environment claim, Johnson must show that (1) she is a member of a protected group; (2)

she was subjected to harassment; (3) the complained-of harassment was based solely on

her disability; (4) the harassment affected a term, condition, or privilege of employment;

and (5) the employer knew or should have known of the harassment and failed to take

prompt, remedial action.  Travis v. Potter, 221 F. App'x 345, 348 (5th Cir. 2007) (citing

Soledad v. U.S. Dep't of Treasury, 304 F.3d 500, 506 & n.8 (5th Cir. 2002)).  "Further,

'the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" Id. (quoting Flowers v. S. Reg'l Physician Servs., Inc., 247 F.3d 229, 236 (5th Cir. 2001)).

For the same reasons discussed above, Johnson cannot establish a prima facie case of disability-based hostile environment because she has not produced any evidence that she is an individual with a disability, as the law defines that term.  She therefore is not a member of the group protected by the Rehabilitation Act.  Moreover, she has not produced any evidence that  the complained-of harassment was based solely on her disability.

Thus, plaintiff has failed to establish a prima facie case of disability discrimination or disability-based hostile environment.  Defendant is entitled to summary judgment in his favor as a matter of law on these claims.

C.     Plaintiff Cannot Establish a Prima Facie Case of Hostile Environment
       Based on Race or Age

Johnson alleges that Astrue subjected her to a hostile work environment because of her race and age.  The specific incidents that she alleges contributed to an age- or race-based hostile work environment consist of the following:

1.     Swear gave her larger, more complex files to work on until Terrance changed the workload distribution policy in 2003.  Swear continued to review plaintiff's work more closely than the work of other employees even after the file distribution policy changed.

21

2.      Swear constantly complained about plaintiff's work performance, implying
        that she was an unproductive "slacker."

3.      On some unspecified date, Swear yelled at Johnson for "congregating" with
        another black employee near the copy machine and waved a pen in
        plaintiff's face a few inches from her eyes.

4.      Swear encouraged plaintiff to retire after she attained 30 years of service
        in 2001 and at various, unspecified times thereafter.

5.      Swear told Terrance and at least one of Johnson's black co-employees that
        one of Swear's ancestors had been an overseer on a plantation.

6.      On July 8, 2004, Swear questioned plaintiff about the volume of work she
        had completed during a day when plaintiff worked at home.   Swear
        expressed doubt that Johnson had done sufficient work during her at-home
        day and suggested that plaintiff might need to submit a leave request for
        any hours that she could not document that she had actually worked during
        that day.

A threshold question is whether the ADEA provides a cause of action for age-

based hostile environment discrimination.  The Fifth Circuit has "never held that the

ADEA contemplates hostile work environment claims.  We have only assumed without

deciding that it does."  Carder v. Cont'l Airlines, Inc., 636 F.3d 172, 178 n.5 (5th Cir.

2011) (quotation omitted).  Accordingly, I will assume without deciding that plaintiff

may bring a hostile work environment claim under the ADEA.

        "To establish a prima facie case of hostile work environment [under
        Title VII or the ADEA], a plaintiff must show:  (1) that [s]he belongs to a
        protected group; (2) [s]he was subjected to unwelcome harassment; (3) the
        harassment complained of was based on race [or age]; (4) the harassment

affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action." Where, as here, the harassment is allegedly committed by a supervisor with immediate or successive authority over the victim, the plaintiff need only satisfy the first four elements.

Fifth Circuit precedent makes it clear that subjective belief of racial [or age-based] motivation cannot import racial [or age-based] animus into an individual's conduct, and, without objective evidence, is insufficient to create a prima facie claim for a hostile work environment under Title VII.

Additionally, "[f]or harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance . . . ."

Montgomery, 720 F. Supp. 2d at 745-46 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Watkins v. Tex. Dep't of Crim. Justice, 269 F. App'x 457, 463, 464 (5th Cir. 2008)) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Lyles v. Tex. Alcohol Beverage Comm'n, 379 F. App'x 380, 384-85 (5th Cir. 2010); Cavalier v. Clearlake Rehab. Hosp., Inc., 306 F. App'x 104, 107 (5th Cir. 2009); Johnson v. TCB Constr. Co., 334 F. App'x 666, 671 (5th Cir. 2009); Garza v. Laredo Indep. Sch. Dist., 309 F. App'x 806, 809 (5th Cir. 2009); Baker v. FedEx Ground Package Sys., Inc., 278 F. App'x 322, 329 (5th Cir. 2008); Ellis, 246 F. App'x at 871; Harris-Childs v. Medco Health Solutions, Inc., 169 F. App'x 913, 917 (5th Cir. 2006); Celestine v. Petroleos de

Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001)); accord Mitchell v. Snow, 326 F.

App'x 852, 856-57 (5th Cir. 2009).

In the instant case, Johnson belongs to the groups protected by Title VII and the

ADEA.  However, even assuming solely for purposes of defendant's summary judgment

motion that the incidents about which she complains constituted unwelcome harassment

and were based on her race and/or age, plaintiff has produced no evidence to establish

that the harassment was sufficiently severe or pervasive to alter the conditions of her

employment and create an abusive working environment.

The United States Supreme Court has held that

> [t]hese standards for judging hostility are sufficiently demanding to ensure
> that Title VII does not become a "general civility code."  Properly applied,
> they will filter out complaints attacking the ordinary tribulations of the
> workplace, such as the sporadic use of abusive language, gender-related
> jokes, and occasional teasing.  We have made it clear that conduct must be
> extreme to amount to a change in the terms and conditions of employment,

Faragher, 524 U.S. at 788 (quotation and citations omitted); see also Lauderdale v. Tex.

Dep't of Crim. Justice, 512 F.3d 157, 163 (5th Cir. 2007) (quoting Faragher, 524 U.S.

at 788) ("Title VII, however, is not a 'general civility code,' and 'simple teasing,'

offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'") (internal

quotations omitted).

Actionable incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Faragher, 524 U.S. at 787 n.1 (quotation omitted).  Furthermore, "[t]he environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 479 (5th Cir. 2008) (quoting Faragher, 524 U.S. at 786).

Accepting Johnson's factual allegations as true solely for purposes of the pending motion for summary judgment, her evidence is insufficient to establish a prima facie case of hostile environment because "there is nothing in the record, aside from her personal claims, that she was harassed at all.  Even assuming that she was harassed, she offers only her own subjective belief that it was on a prohibited ground. . . .  '[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden' in opposing summary judgment." Mitchell, 326 F. App'x at 857 (quoting Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996)).

Swear's monitoring of plaintiff's work, Swear's complaints about plaintiff's performance and Swear's questions on July 8, 2004 about the work Johnson had completed while at home were obviously based on Swear's impression, formed during 16 years of supervising Johnson, that plaintiff was an unproductive employee who

25

required close supervision.  Although Johnson denies this, "anti-discrimination laws are not vehicles for judicial second-guessing of business decisions."  Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001) (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999)).  It is irrelevant whether Swear's supervisory decisions may have been based on incorrect facts, so long as her decisions were not motivated by discriminatory animus.  Scales v. Slater, 181 F.3d 703, 711 (5th Cir. 1999); Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir. 1993).  "Even if evidence suggests that a decision was wrong, we will not substitute our judgment . . . for the employer's business judgment."  Scott v. Univ. of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).  Employees in Johnson's position testified that Swear also reviewed the work they did at home and questioned other employees at their desks about their work.  Terrance and supervisor Lobo confirmed that Swear reviewed the work that her employees did at home.  Even if Swear's management style was abrasive, these actions within her routine supervisory duties were nothing more than the ordinary tribulations of the workplace and do not amount to actionable harassment.

Accepting plaintiff's account of the events of July 8, 2004 solely for purposes of the instant motion, Swear could have been more polite in her questioning of Johnson. However, neither Title VII nor the ADEA applies to "the ordinary tribulations of the

workplace, such as the sporadic use of abusive language." Faragher, 524 U.S. at 788. These laws are designed to remedy discrimination, not impoliteness. Nothing in the evidence suggests that Swear's aggressive questions were based on plaintiff's age or race, or amounted to anything more than an isolated incident and the ordinary tribulations of the workplace.

Johnson has proffered only her own subjective belief that Swear based her actions toward plaintiff on her age or race, which is insufficient to raise a genuine issue of disputed fact that the work environment was hostile. See Baloch, 550 F.3d at 1201 (Although plaintiff Baloch "clearly had several verbal clashes with his supervisor," "none of the comments or actions directed at Baloch expressly focused on his race, religion, age, or disability–unlike in some hostile work environment cases. Moreover, the disciplinary actions and workplace conflicts were not so 'severe' or 'pervasive' as to have changed the conditions of Baloch's employment. . . . And his assertion of pervasive and constant abuse is undermined by the sporadic nature of the conflicts."); Montgomery, 720 F. Supp. 2d at 746 (Plaintiff alleged that her supervisor "constantly harassed her about her job performance," "had a 'personal vendetta' against her," "'nit-picked,' worked against her, and tried to make her department 'look bad' by doing [things] such as failing to hire enough assistants for her during the Christmas season and failing to require other employees to assist her." The court found that Montgomery had "presented

27

no evidence other than her own subjective belief that the actions allegedly taken against her were based on race, Montgomery has not alleged that [the supervisor] ever used racial epithets or slurs toward her or anyone else, and nothing in the content of [his] statements or the written disciplinary actions suggests they were based on race.").

Moreover, even if Swear was motivated by racial animus when she yelled at Johnson and another black employee for congregating, or when she commented to Terrance and at least one other employee (but not to Johnson) that one of Swear's ancestors had been an overseer on a plantation, these isolated incidents were not severe or pervasive enough to create a hostile work environment.  Turner v. Baylor Richardson Med. Cen., 476 F.3d 337, 348 (5th Cir. 2007); Montgomery, 720 F. Supp. 2d at 747. Terrance, who is African-American, testified that Swear's comment about her ancestor was not offensive and was merely a factual report of a genealogical nature about something that Swear had just learned.  None of the employees who heard the comment reported it as racist.  "[T]hese comments pale in comparison, both in severity and frequency, to those found in [other] cases" where plaintiff's evidence was sufficient to create a material issue of disputed fact.  Turner, 476 F.3d at 348 (citing Walker v. Thompson, 214 F.3d 615, 619-22 (5th Cir. 2000) (plaintiff survived summary judgment when evidence demonstrated years of inflammatory racial epithets); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1266 (7th Cir. 1991) (finding summary judgment for

28

defendant inappropriate when plaintiff was subjected to offensive name-calling for a 10-year period and whose workstation was adorned with "a human-sized dummy with a black head"); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 182 (4th Cir. 2001) (reversing summary judgment where plaintiff suffered "incessant racial slurs")).

Even if Swear and Terrance encouraged plaintiff to retire at various, unspecified times during 2004, these isolated incidents were neither subjectively nor objectively severe or pervasive enough to create a hostile work environment based on age.  Plaintiff never filed a complaint about these comments nor did she retire, which indicate that she did not perceive the action as subjectively hostile.  Terrance encouraged Johnson to retire as a way of resolving her ongoing conflict with Swear.  No reasonable person would view this advice as objectively offensive.

Because plaintiff has presented no disputed issue of material fact regarding whether she was subjected to a hostile work environment based on her race or age, Astrue is entitled to summary judgment in his favor as a matter of law as to these two claims.

## CONCLUSION

For all of the foregoing reasons, IT IS ORDERED that Astrue's motion for summary judgment is GRANTED and plaintiff's claims are DISMISSED WITH

PREJUDICE.  Judgment will be entered accordingly, plaintiff to bear all costs of this

proceeding.  Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this ____23rd____ day of June, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE